

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**12/31/2013**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| MICHELLE LOVE-BAKER, | ) | CASE NO. 13-33057-H3-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a trial on "First Victoria National Bank's Objection to Homestead Exemption" (Docket No. 22) and the "Chapter 7 Trustee's Objection to Homestead Exemption Pursuant to 11 U.S.C. § 522(o)" (Docket No. 39). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered allowing the exemption. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Michelle Love-Baker ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 19, 2013. Eva S. Engelhart ("Trustee") is the Chapter 7 Trustee.

During 2006, while Debtor and her then-husband, Kevin Baker, lived in Oklahoma, Debtor and Kevin Baker each signed instruments purporting to create revocable living trusts for each of them. (Debtor's Exhibits C, E).

Debtor testified that neither she nor Kevin Baker transferred any assets into the purported trusts prior to 2009.

In November, 2007, Debtor and Kevin Baker moved to Texas, and purchased a home in Magnolia, Texas.  Debtor testified that the value of the home is $365,000.

Debtor testified that, beginning in November, 2007, she worked as a nurse anaesthetist at a company called Northwest Anaesthesiology.

Debtor testified that, during February, 2009, Kevin Baker died unexpectedly.

Kevin Baker's death certificate reflects that he was 41 years old at the time of his death.  (Debtor's Exhibit A).

Kevin Baker had purchased a life insurance policy from American General Life Insurance Company ("AGLIC").  Debtor testified that, in order to claim the death benefits from the insurance policy, she was required to probate Kevin Baker's will as a muniment of title.  Kevin Baker's will (Debtor's Exhibit B) was admitted to probate as a muniment of title on May 13, 2009. (Debtor's Exhibit D).

On June 3, 2009, Debtor deposited $500 into an account at Ameriprise styled the Michelle Love-Baker Revocable Living Trust (the "RLT").  She testified that she was required to deposit $500 to open the account so that the trust would be ready to issue checks when she deposited the life insurance proceeds.

2

On July 28, 2009, AGLIC issued a check paying $1,001,632.93 in proceeds from the insurance policy to Debtor. (Debtor's Exhibit F).

On August 3, 2009, Debtor deposited the insurance check into the RLT account at Ameriprise.  (Debtor's Exhibit H).

Debtor testified that she did not work for five months after Kevin Baker's death.  She testified that, for the next year or year and a half, she worked one or two days per week.  She testified that, during the time when she was not working or working one or two days per week, she made payments for support of herself and her two minor children as trustee of the RLT.[1] She testified that she used some of the funds for home maintenance, home repairs, and replacement, upgrade or modification of her home.

Debtor testified that, during the summer of 2009, several months after Kevin Baker's death, Kirk English requested that she invest $90,000 in a pizza business.  She testified that she made the investment in Our Slice of Life Too, Inc. ("OSLT"). She testified that she believed she was to receive 24.5 percent ownership of OSLT.

Debtor testified that, after she made the investment, English made several requests that she sign documents under

---

[1]Debtor's schedules indicate that the children are ages 11 and 8.

3

significant time pressure.  She testified that the documents included guarantees of OSLT's debt to First Victoria National Bank ("FVNB") and the lessor of OSLT's business premises.

Debtor provided a financial statement to FVNB on November 8, 2011.  The financial statement indicated, <u>inter alia</u>, that she had $548,775 in the Ameriprise RLT account.  (FVNB Exhibit 2).

Debtor testified that she had no role in the operation, management, or decision making of OSLT.

During October, 2012, Debtor, acting as trustee of the RLT, made a payment of approximately $240,000 toward her home mortgage.  She testified that the sole reason she made the payment was because she had received investment information from three financial firms advising her that there would likely be a major drop in the stock market (where the funds in the RLT were held) if there was a change in presidential administration as a result of the November, 2012, elections.  The court finds Debtor's testimony credible.

In March, 2013, FVNB filed suit against Debtor, seeking to recover the entirety of OSLT's debt from Debtor.  Debtor testified that OSLT ceased doing business during September, 2012.  She testified that the other shareholders of OSLT have all filed bankruptcy cases.

4

In Debtor's Schedule C, Debtor claimed as exempt the home located in Magnolia, Texas.  (Docket No. 11).

In the instant objections, FVNB and Trustee object to exemption of the home, to the extent of Debtor's October, 2012 payment toward the mortgage, under Section 522(o) of the Bankruptcy Code.

<u>Conclusions of Law</u>

Section 522(o) of the Bankruptcy Code provides:

(o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in -

> (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
> (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
> (3) a burial plot for the debtor or a dependent of the debtor; or
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;

shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522(o).

5

In an objection to exemptions, the burden of proof rests with the party objecting to exemptions.  Rule 4003(c), Fed. R. Bankr. P.

In the instant case, both FVNB and Trustee argue that Debtor disposed of the assets in the RLT, by paying the mortgage, with intent to hinder, delay, or defraud creditors.  FVNB and Trustee assert that the assets in the RLT were Debtor's property, and were not subject to exemption.

Intent to hinder, delay, or defraud creditors may be inferred from the Debtor's conduct. In re Olivier, 819 F.2d 550 (5th Cir. 1987).

While the instant case presents interesting issues of trust and estate law as to whether the funds in the RLT were or were not exempt, the court finds persuasive Debtor's non-fraudulent explanation as to why she made the payment of the home mortgage.  The court takes judicial notice that there was significant uncertainty regarding business activity during the last quarter of 2012, which involved a presidential election, as well as concerns over sequestering of funds for federal programs, the federal debt ceiling, and continuing resolutions delaying the imposition of a government "shutdown."  The court concludes that Debtor's decision to pay down the mortgage from funds in the RLT was done with legitimate business concerns and not as an act with intent to hinder, delay, or defraud creditors.  Thus, the

exemption is allowed.

Based on the foregoing, a separate Judgment will be entered allowing the exemption as filed.

Signed at Houston, Texas on December 31, 2013.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

7